UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------------

|  |  |  |
|---|---|---|
| DARELL NASH, SR., | : | CASE NO. 5:04-CV-435 |
|  | : |  |
| Petitioner, | : | JUDGE JAMES GWIN |
|  | : |  |
| vs. | : | OPINION AND ORDER |
|  | : | [Resolving Doc. No. 1] |
| MICHELLE EBERLIN, | : |  |
|  | : |  |
| Respondent. | : |  |
|  | : |  |

------------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

This matter comes before the Court for reconsideration of Petitioner Darell Nash's petition for a writ of habeas corpus. [Doc. 1]. The Court initially granted Nash's petition on April 1, 2005, finding insufficient evidence for the petitioner's conviction for felonious assault. [Doc. 14]. Respondent Michelle Eberlin appealed. The Sixth Circuit reversed the Court's opinion and remanded for reconsideration in light of the state trial transcript. [Docs. 29, 31]. The Court, having reviewed the transcript and the evidence brought against Petitioner Nash, **GRANTS** his petition for a writ of habeas corpus.

I. Background

The Court set forth the procedural history of the case in its earlier opinion, and incorporates that discussion herein by reference. To briefly summarize, on March 5, 2002, a jury convicted Nash of (1) improperly discharging a firearm at or into a habitation and (2) felonious assault. The jury also found that Nash had a firearm on or about his person or under his control while committing the above offenses. The common pleas court judge sentenced Nash to a term of two years imprisonment

-1-

Case No. 5:04-CV-435
Gwin, J.

on each charge, to be served concurrently, and to a mandatory consecutive term of three years on the firearm specifications. The petitioner's aggregate sentence was five years in prison. Over a strong dissent, a state appellate court affirmed Nash's conviction.

The Sixth Circuit now directs the Court to reconsider Nash's petition in light of the trial record.

## II. Legal Standard

*A. Habeas Corpus Review*

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), governs the standards of habeas corpus review for state court decisions. The AEDPA provides that federal courts cannot grant a habeas petition for any claim that the state court adjudicated on the merits unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). *See also Miller v. Francis*, 269 F.3d 609, 614 (6th Cir. 2001). Under 28 U.S.C. § 2254(d)(1), a court may grant a writ of habeas corpus "if the court concludes that no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Warren v. Smith*, 161 F.3d 358, 360 (6th Cir. 1998) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

*B. Felonious Assault*

The Ohio Revised Code defines the crime of felonious assault, in relevant part, as follows: "No person shall knowingly . . . [c]ause or attempt to cause physical harm to another or to another's

Case No. 5:04-CV-435
Gwin, J.

unborn by means of a deadly weapon or dangerous ordinance." Ohio Rev. Code § 2903.11(A)(2).

The intent required to prove felonious assault is that the defendant acted "knowingly." The Ohio Revised Code defines "knowingly," as used in Ohio Rev. Code §2903.11, as follows:

> A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist.

*Id.* § 2901.22(B). A defendant acts knowingly when, although not intending the result, he is aware that the result will probably occur. *State v. Lee*, No. 97APA12-1629, 1998 Ohio App. LEXIS 4150, at *7 (Ohio Ct. App. Sept. 3, 1998).

### III. Analysis

In keeping with the Sixth Circuit's mandate, the Court focuses its attention on the state trial record. After considering that record, the Court finds, again, that there was insufficient evidence to convict Petitioner Nash on the charge of felonious assault.

*A. The Standard For Claims Of Insufficient Evidence*

As before, the Court liberally construes Nash's *pro se* petition as challenging the sufficiency of the evidence.[1] Where a petitioner challenges the sufficiency of evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. A conviction based on insufficient evidence is a denial of due process. *See Tibbs v. Florida*, 457 U.S. 31, 45 (1982). Because the Due Process Clause "forbids a State to convict a person of a crime without proving the elements of that crime beyond a reasonable doubt,"

---

[1] The Court notes that the Sixth Circuit did not order the Court to adopt a different review on remand.

Case No. 5:04-CV-435
Gwin, J.

*Fiore v. White*, 531 U.S. 225, 228-29 (2001), "a state law question regarding the elements of the crime predicates enforcement of [the petitioner's] federal constitutional rights." *Richey v. Mitchell*, 395 F.3d 660, 672 (6th Cir. 2005). As a result, an insufficient evidence claim is subject to habeas corpus review.

Sufficient evidence supports a conviction if, after viewing the evidence in the light most favorable to the prosecution, the Court can conclude that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson*, 443 U.S. at 324. This standard does not permit the Court to make its own subjective determination of guilt or innocence. Rather, the standard recognizes the responsibility of the trier of fact to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to the ultimate facts. *Herrera v. Collins*, 506 U.S. 390, 401-02 (1993).

*B. The Trial Record*

As the Sixth Circuit directed, the Court reviewed the transcript of the petitioner's trial in state court. At most, the State offered testimony supporting a conviction for aggravated menacing, a first degree misdemeanor under Ohio Rev. Code § 2903.21. But even viewing the evidence in the light most favorable to prosecution, the State did not offer sufficient evidence to convict the petitioner of felonious assault.

Connie Nash is the petitioner's wife and the victim of the alleged felonious assault. She offered no testimony that the petitioner ever intentionally pointed a gun at her. She testified that she became outraged when she learned that the petitioner had an affair and began to scream at him. [Tr. at 93]. In her initial statement to the police, Ms. Nash said that the respondent grabbed her when she started screaming at him, the two "tussled" and she fell into a highchair. [Tr. at 106]. She also

Case No. 5:04-CV-435
Gwin, J.

told the police that the respondent retrieved a gun from his upstairs bedroom and went back downstairs. *Id.* There, the gun discharged into wall when the respondent and his son wrestled over the gun. [Tr. at 107]. Ms. Nash additionally told the police that the petitioner took the gun upstairs and followed her into her daughter's bedroom. *Id.* After another struggle between the respondent and his son, the gun discharged again. She changed her story at trial, saying that she was not in her daughter's room when the gun discharged. [Tr. at 117]. Regardless, Ms. Nash never testified that the petitioner pointed the gun at her.

The petitioner's son, Darell Nash, Jr., testified that the gun discharged twice when he struggled with his father for control of the gun. [Tr. at 127, 128]. The son testified that his mother was not immediately present when the gun discharged downstairs and in his sister's room. [Tr. at 130]. In his statement to the police, Darell Nash told the police that his mother *was* present in the sister's room when the gun discharged. [Tr. at 132]. He also told police the gun "was pointed down" when it discharged in the bedroom. [Tr. at 133]. On cross-examination, he reiterated that his father did not point the gun at anyone. [Tr. at 138].

The State called William Jeter, the petitioner's nephew. He testified that he was in the basement with Darell Nash, Jr., when the commotion began in the kitchen. [Tr. at 145]. He witnessed the struggles between the petitioner and his son. [Tr. at 149, 150, 152]. He initially told the police that the petitioner followed his wife into their daughter's bedroom, but testified that his statement to the police was a lie. [Tr. at 152]. Jeter did not testify that the petitioner intentionally pointed the gun at anyone.

Officer Patricia Bardnell testified next. She responded to the crime scene and observed shell casings from the gun. [Tr. at 166]. She also testified that she saw bullet holes in the walls near the

-5-

Case No. 5:04-CV-435
Gwin, J.

first floor stairway and in the daughter's room. [Tr. at 167]. She also testified that Connie Nash, Darell Nash, Jr., and William Jeter stated that the gun fired during a struggle between the petitioner and his son. [Tr. at 175]. From this, Officer Bardnell "gathered" that the gun did not go off accidentally. [Tr. at 174].

The State next called Officer Michael Pomesky. He also testified to the presence of bullet holes in the walls and the location of shell casings. [Tr. at 182-186]. He offered no testimony regarding the petitioner's intent. In Officer Pomesky's words, he "was only there to collect the evidence." [Tr. at 187].

Criminologist Michael Short testified next for the State. He testified regarding the firearm, bullet, and shell casing evidence. He offered no testimony regarding the petitioner's intent. [Tr. at 196].

Next, the State called Detective William Yarbrough. Detective Yarbrough testified primarily regarding the petitioner's comments after he left the house. Yarbrough listened in on a telephone conversation between the petitioner and his son. During that conversation, the petitioner said "You can tell [Connie Nash] she doesn't have a job any longer because I'm going to F'ing kill her." [Tr. at 201]. This conversation occurred after the petitioner left the house.

Detective John Wellman testified regarding his arrest and interview of the petitioner. [Tr. at 209]. The petitioner told Detective Wellman that the gun went off during the struggles with his son. [Tr. at 215]. The petitioner did not tell Wellman that he pointed the gun at anyone. [Tr. at 217]. According to Wellman, the petitioner said the gun went off accidentally and was pointed down. [Tr. at 218]. Detective Wellman was the last prosection witness.

The defense called Ladonna Walsh as its first witness. Ms. Walsh is the daughter of the

Case No. 5:04-CV-435
Gwin, J.

petitioner and Connie Nash. She testified regarding the initial confrontation between the petitioner and his wife. [Tr. at 230]. She testified that the gun fired while the petitioner and his son struggled. [Tr. at 231, 232]. Ms. Walsh testified that her mother was not in the bedroom when the gun discharged the second time. [Tr. at 239].

The defense next called the petitioner, Darell Nash, Sr., to testify. He also testified that the gun went off accidentally. [Tr. at 244]. He testified that he told Detective Wellman that he brought the gun downstairs because he wanted to scare his wife. [Tr. at 245, 253]. He further testified that the gun was "always" pointed "downwards." [Tr. at 245]. He also told Detective Wellman that he followed his wife into his daughter's room. [Tr. at 254].

*C. Felonious Assault*

Having reviewed the trial transcript, the Court finds that the State offered insufficient evidence to convict the petitioner of felonious assault. As the Court said in its original opinion [Doc. 13 at 8], the key issue is whether there was evidence that Nash *knowingly* caused or attempted to cause physical harm to another by means of a deadly weapon. Under Ohio Rev. Code § 2903.11(A)(2), a necessary element of the crime of felonious assault is that the defendant acted knowingly. Viewing the facts in the light most favorable to the prosecution, the State did not present sufficient evidence of Nash's intent.

At best, the State offered evidence that (1) Nash brought out the gun to scare his wife, (2) Nash followed his wife into their daughter's room, and (3) the gun went off while the petitioner struggled with his son. That is not enough to convict the petitioner of felonious assault.

The Court, again, follows *State v. Brooks*, 44 Ohio St. 3d 185, 192 (1989). There, the Ohio Supreme Court upheld a felonious assault conviction, but also held that:

Case No. 5:04-CV-435
Gwin, J.

> The act of pointing a deadly weapon at another, without additional evidence regarding the actor's intention, is insufficient evidence to convict a defendant of the offense of 'felonious assault' as defined by [Ohio Rev. Code §] 2903.11(A)(2). While the pointing of a deadly weapon would undoubtedly justify a jury in concluding that the accused had committed the offense of 'aggravated menacing' as defined by [Ohio Rev. Code §] 2903.21, the act of pointing a deadly weapon at another is essentially an equivocal act as it relates to the accused's intention to cause physical harm to another by use of that weapon.

In affirming the conviction, the Ohio Supreme Court looked to the facts that the defendant pointed the gun at a female acquaintance during a heated argument, told the woman he was going to kill her while pointing the weapon at her, and left the scene after a bystander called the police. *Id.*

In *State v. Green*, 58 Ohio St. 3d 239, 242 (1991), the Ohio Supreme Court reconfirmed the proposition that "the act of pointing a deadly weapon at another *coupled with a threat*, which indicates an intent to use such a weapon, is sufficient to convict a defendant of felonious assault . . . . " (Emphasis added).

Unlike *Brooks*, there is no evidence that Nash (1) pointed the gun at his wife, or (2) threatened her directly. According to Nash, he brought the gun downstairs to scare his wife. The gun discharged in the course of the petitioner's physical struggles with his son. Nash threatened his wife indirectly to his son, and only after he left the scene of the confrontation.

Viewing the facts in the light most favorable to the prosecution, a rational trier of fact could not conclude beyond a reasonable doubt that the petitioner knowingly caused or attempted to cause physical harm to his wife or to anyone else. The prosecution did not present sufficient evidence to convict the petitioner of felonious assault.

IV. Conclusion

Case No. 5:04-CV-435
Gwin, J.

For the reasons detailed above, the Court **GRANTS** Petitioner Nash's petition for a writ of habeas corpus. Because the prosecution failed to prove an essential element of the felonious assault claim, double jeopardy prevents the Court from ordering a retrial. *Burks v. United States*, 437 U.S. 1, 16-18 (1978). Accordingly, the State of Ohio must release Petitioner Nash from custody immediately upon issuance of this order.

IT IS SO ORDERED.


Dated: July 27, 2006                              s/      *James S. Gwin*
                                                  JAMES S. GWIN
                                                  UNITED STATES DISTRICT JUDGE